IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DAVID STONEBROOK,<br><br>Plaintiffs,<br><br>v.<br><br>MERCK KGaA, DARMSTADT, GERMANY, SIGMA-ALDRICH CORP., EMD MILLIPORE CORP., AND RESEARCH ORGANICS, LLC,<br><br>Defendants. | Case No. 1:21-cv-10866-DJC<br><br>Hon. Denise J. Casper |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS**

Defendants Merck KGaA, Darmstadt, Germany ("MKDG"), Sigma-Aldrich Corporation ("Sigma-Aldrich"), EMD Millipore Corporation ("EMD Millipore"), and Research Organics LLC ("SAFC Cleveland") (collectively "Defendants"), by and through their attorneys,[1] respectfully move this Court to award attorneys' fees, expenses, and costs under the False Claims Act ("FCA") or, in the alternative, under the Court's inherent powers. 31 U.S.C. § 3730(d)(4).

**INTRODUCTION**

Plaintiff-Relator David S. Stonebrook filed a *qui tam* complaint under the FCA against Defendants nearly three years ago. Dkt. 1. Mr. Stonebrook knew well-before he filed the Complaint that its contents were meritless. His claims that Defendants caused Pfizer and Moderna to submit false claims for reimbursement to the government related to their COVID-19 vaccines have repeatedly been established to be false. The Court's recent memorandum opinion and order concluded that Mr. Stonebrook's claims were "devoid" of the necessary factual support to state a

---

[1] As to Merck KGaA, Darmstadt, Germany, counsel have appeared in this action for the limited purpose of raising – and without waiver of – jurisdictional defenses.

1

viable FCA claim and found that he had overstated the publicly available records he used to artificially bolster his allegations. Mr. Stonebrook is a serial whistleblower who hijacked the private enforcement provision of the FCA to assert demonstrably false allegations involving COVID-19 vaccines in an attempt to extort a lucrative financial payday from Defendants. Mr. Stonebrook's claims were clearly frivolous, vexatious, and brought to harass Defendants, and they became the tool by which he continued repeatedly to harass Defendants, their customers, and undersigned counsel throughout the course of the litigation with the purpose of pressuring Defendants into settlement. *See* 31 U.S.C. § 3730(d)(4). Defendants respectfully request the Court award their reasonable attorneys' fees, expenses, and costs, all of which are the direct result of Mr. Stonebrook's baseless and vindictively prosecuted FCA lawsuit.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.     The Court's Dismissal of the Amended Complaint

Mr. Stonebrook initiated this action on May 25, 2021. Dkt. 1. After more than a year of investigation with active participation by Defendants, the United States declined to intervene. Dkt. 22. Defendants moved to dismiss the Complaint on January 30, 2023. Dkt. 58. Rather than file a Response to Defendants' Motion to Dismiss, Mr. Stonebrook filed an Amended Complaint on March 7, 2023. Dkt. 70. Mr. Stonebrook averred in the Amended Complaint that Defendants caused Pfizer and Moderna to submit false claims to the government associated with COVID-19 vaccines in violation of the FCA. Dkt. 123 at 1. His allegations included that (1) Defendants manufactured and packaged two products, HEPES and TRIS, at a facility in Cleveland, Ohio, (the "Cleveland Facility") in noncompliance with Current Good Manufacturing ("cGMP") regulations, (2) Defendants falsely certified cGMP compliance to Pfizer and Moderna as to HEPES and TRIS from the Cleveland Facility, and (3) Defendants caused Pfizer and Moderna to falsely certify to the government that their COVID-19 vaccines were cGMP compliant. *Id*. at 13–14.

Defendants filed their Motion to Dismiss the Amended Complaint on March 30, 2023. Dkt. 84. The Court heard argument from both parties on November 15, 2023. Dkt. 120. On March 15, 2023, the Court granted Defendants' Motion to Dismiss in full (Dkt. 123) and entered an Order of Dismissal (Dkt. 124), holding that Mr. Stonebrook failed to plead fraud with requisite particularity under Federal Rule of Civil Procedure ("FRCP") 9(b) (Dkt. 123 at 11–15) and failed to state a plausible FCA claim under FRCP 12(b)(6).[2]

The Court found that Mr. Stonebrook failed to allege the "who," "what," "where," "when," and "how" of the alleged fraud, noting that he alleged "no such supportive facts" as to how Defendants allegedly misled Pfizer and Moderna regarding the quality of TRIS and HEPES. *Id*. at 14–15. The Court also found that Mr. Stonebrook did not include any specifics, *inter alia*, as to how many false claims were submitted to the government let alone any rough time periods for when or where false claims were submitted. *Id*. at 13–15. The Court explicitly noted that Mr. Stonebrook's claims "rest[ed] upon allegations that overstate Pfizer and Moderna's GMP compliance obligations as set forth in the four contracts incorporated by reference into the amended complaint" (*Id*. at 18) and that his allegations are "*belied* by the actual provisions of the contracts." *Id*. (emphasis added).

The deficiencies highlighted by the Court's opinion, including the Amended Complaint's paucity of specific facts and purposeful exaggeration, demonstrate that Mr. Stonebrook's claims have no factual or legal basis.

## II.   Mr. Stonebrook's Claims Have Been Repeatedly and Easily Debunked

Although the Court was required to accept Mr. Stonebrook's factual allegations as true for

---

[2] The Court allowed Defendants' Motion to Dismiss but did not give Mr. Stonebrook leave to amend. Dkt. 124. The Court's docket also notes that the case has been administratively closed.

purposes of Defendants' Motion to Dismiss, Mr. Stonebrook knew his claims were baseless before he initiated this action. Mr. Stonebrook conveniently omits in his pleadings that Defendants undertook an immediate and thorough internal quality investigation in response to his fabricated concerns that concluded his complaints were unsubstantiated. *See Sigma-Aldrich Corporation, et al. v. David S. Stonebrook*, Civ. A. No. 1:23-CV-10140-DJC (D. Mass) (the "MS Action"), Dkt. 1, Compl., ¶¶ 28–30, Exhibit C. These findings were sent in writing to Mr. Stonebrook, who refused to meet with Defendants' representatives to discuss the findings. *Id*. The U.S. government similarly investigated his claims with "diligence and due care" and declined to intervene "[a]fter careful review and consideration" (Dkt. 22), which also was communicated to Mr. Stonebrook. He later was presented with two motions to dismiss that explained how both the Complaint and Amended Complaint were factually and legally insufficient to state an FCA claim. Dkts. 58, 85. When he nevertheless persistently attempted to leverage his meritless claims into a settlement by spreading his lies directly to Defendants' customers, three of the Defendants (collectively "MilliporeSigma") filed a separate lawsuit against Mr. Stonebrook for commercial disparagement, defamation, intentional interference with advantageous business relations, breach of contract, and injunctive relief in an attempt to get him to stop. *See generally* MS Action Compl.

Very simply, the Cleveland Facility is not now, never has been, and as a matter of law is not required to be a registered drug establishment with the Food and Drug Administration ("FDA") to which cGMPs would apply (Dkt. 85 at 4), a conclusion arrived at very quickly by everyone but Mr. Stonebrook who professes to be a cGMP expert. Dkt. 70 ¶¶ 2, 12, 13, 41. A simple online search of the FDA's Drug Establishment Current Registration Site confirms that the Cleveland Facility has never appeared in the database. Dkt. 85 at 4. The Cleveland Facility does, however, comply with all quality requirements that actually apply to it (MS Action Compl., ¶ 56), and its

4

products are fit for manufacturing.  *Id.* ¶ 58.  Mr. Stonebrook knew that the Cleveland Facility was not required to be cGMP compliant.  *Id.* ¶ 30.  He also knew that products manufactured at the Cleveland Facility were supplied to customers "for further manufacturing use only," were marked as "not intended for direct use in humans or animals," and "did not pose a risk to patient safety." *Id.* ¶ 53.  Mr. Stonebrook's allegation that TRIS and HEPES were "used in" the COVID-19 vaccines is similarly contradicted by publicly available information and the very FDA documents relied upon by Mr. Stonebrook in his pleading.  Dkt. 85 at 9–12.

### III.     Mr. Stonebrook's Actions Betray his True Intent

Mr. Stonebrook's conduct during his employment at the Cleveland Facility and throughout this litigation has revealed a pattern of disturbing behavior that supports the conclusion that he brought and continued to pursue the FCA action for one reason: to extort a financial settlement from Defendants.

Mr. Stonebrook worked at the Cleveland Facility for less than two months and was terminated because of his erratic and threatening conduct.  This behavior caused Defendants to activate a workplace violence protocol, hire private security to protect the Cleveland Facility and two of Mr. Stonebrook's supervisors, enhance security measures for MKDG's executives, and retain a security consultant to conduct a threat assessment.  MS Action Compl., ¶¶ 31–35.  The threat assessment concluded that there was a "concern for violence" with respect to Mr. Stonebrook.  *Id*. ¶ 34.  This determination was based in part on a criminal history, confirmed by a private investigator hired by Defendants to assist in serving Mr. Stonebrook in the MS Action, that includes extortion against a public official and several restraining orders.  Declaration of Scott Memmott ("Memmott Dec.") ¶ 7.

Mr. Stonebrook's personal conduct in this litigation has been consistent with his troubling

5

past.  Mr. Stonebrook has made harassing written and verbal statements directly to undersigned counsel, while himself represented by counsel, which have made it clear he has cyberstalked Mr. Memmott and his family.  Memmott Dec. ¶¶ 1-5.  Mr. Stonebrook's email communications to Mr. Memmott, for example, invoked the death of Mr. Memmott's 11-year-old son from brain cancer and insinuated that Mr. Stonebrook would be present in Tucson, AZ (when he lives in Florida) at the same time as the scheduled wedding of Mr. Memmott's daughter, both of which were clear attempts to intimidate Mr. Memmott into backing a more conciliatory settlement position.  *Id*.  Morgan Lewis increased security at three of the firm's offices out of concern for the safety of undersigned counsel.  *Id*. ¶ 8.  Mr. Stonebrook's email messages to Mr. Memmott were shared with the U.S. Attorney's Office, which expressed its concern.  *Id*. at ¶ 6.  The communications also were shared with Mr. Stonebrook's counsel, none of whom were aware of his messages.  *Id*.  Notably, these communications have come at points when Mr. Stonebrook has seemingly assessed that not-so-veiled threats would be productive in extracting a favorable cash settlement.

## **LEGAL STANDARD**

In declined *qui tam* actions, the Court has discretion under the FCA to "award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4).[3]  Congress implemented this provision to disincentivize potential relators from using the private enforcement provisions of the FCA for illegitimate purposes.  S. Rep. No. 99-345, at 29 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5294.  The Court may award attorneys' fees, expenses, and costs if it

---

[3] In the First Circuit, a "prevailing party" is the "party who 'prevailed on the merits of at least some of his claims.'" *Covidien LP v. Esch*, 427 F. Supp. 3d 152, 159 (D. Mass. 2019) (quoting *Spooner v. EEN, Inc.,* 644 F.3d 62, 66 (1st Cir. 2011)).

determines that the claims fall under any of the three enumerated categories under 31 U.S.C. § 3730(d)(4).  *See Mikes v. Straus,* 274 F.3d 687, 704 (2d Cir. 2001), abrogated on other grounds by *Universal Health Servs., Inc. v. United States*, 579 U.S. 176 (2016).

## ARGUMENT

### I.     Mr. Stonebrook's Claims are Frivolous

Mr. Stonebrook's claims regarding the products manufactured and packaged at the Cleveland Facility and any alleged misrepresentations made by Defendants to Pfizer and Moderna, and, in turn, by Pfizer and Moderna to the U.S. government, are contradicted by the very documents Mr. Stonebrook incorporated by reference into the Amended Complaint and are demonstrably false.  "A claim is frivolous when, viewed objectively, it may be said to have no reasonable chance of success, and present no valid argument to modify present law."  *Mikes*, 274 F.3d at 705; *see also United States ex rel. Bierman v. Orthofix Intern., N.V.*, 113 F.Supp.3d 414, 429 (D. Mass. 2015).  The Court found that Mr. Stonebrook pleaded no facts to support his assertion that Defendants misled Pfizer or Moderna about the quality of their products.  Dkt. 123 at 14–15.  Indeed, Mr. Stonebrook *never* had any factual support for such allegations, relying solely on "information and belief."  *Id.; see also* Dkt. 70 at ¶ 32.  The Court concluded that Mr. Stonebrook overstated the cGMP requirements of the publicly available Pfizer and Moderna contracts that he relied upon and incorporated by reference into the Amended Complaint and that his allegation that Pfizer was required to ensure conformity with cGMPs was "misleading."  Dkt. 123 at 18–19.  His claims that Pfizer and Moderna required "perfect GMP compliance among suppliers" were "belied" by the contracts themselves.  *Id*.

Moreover, Mr. Stonebrook has been repeatedly informed that his claims regarding the Cleveland Facility's cGMP noncompliance were not valid.  His claims can be contradicted by a

simple online inquiry of the FDA's Drug Establishment Current Registration Site. Dkt. 85 at 4. Mr. Stonebrook's assertions of regulatory noncompliance are simply not true. *See United States ex rel. Minna Ree Winer Children's Class Tr. v. Regions Bank of Louisiana*, Civ. A. No. 94-4085, 1996 WL 264981, at *8 (E.D. La. May 17, 1996) (ordering relators to pay attorney fees under the FCA for an action "based entirely on their own personal opinion, supposition and speculation…"). Mr. Stonebrook's claims are "bereft of any objective factual support, and the action clearly had no chance of success and therefore [] frivolous under the FCA's fee-shifting position." *United States ex rel. Jehl v. GGNSC Southaven, LLC*, No. 3:19-CV-091-NBB-JMV, 2023 WL 2668514, at *3 (N.D. Miss. Mar. 28, 2023).

## II. Mr. Stonebrook Brought his Lawsuit to Harass and Extort Defendants

Mr. Stonebrook's conduct demonstrates that he initiated this action to exploit misinformation and fearmongering associated with the COVID-19 vaccines. He has since waged a campaign of harassment with the intent to pressure Defendants into a financial settlement. "Vexatious and harassing claims are those instituted maliciously or without good cause." *United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*, Civ. A. No. 12-10896-MPK, 2022 WL 203654, at *3 (D. Mass. Jan. 24, 2022) (quoting *United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.,* 528 F.Supp.2d 533, 544 (E.D. Pa. 2007)); *see also Jehl* 2023 WL 2668514, at *2 ("A claim is vexatious [or harassing] when the plaintiff brings the action for an improper purpose, such as to annoy or harass the defendant.") (quoting *United States ex rel. Bain v. Georgia Gulf Corp.,* 208 F.App'x 280, 283 (5th Cir. 2006)). Since the United States informed Mr. Stonebrook that it was declining to intervene in his case, Mr. Stonebrook has spread his lies to Defendants' customers to the point where Defendants filed a separate lawsuit to attempt to stop him. Undeterred, Mr. Stonebrook has proceeded to harass undersigned counsel in attempts to extract a lucrative

8

settlement.  His actions are "indicative of [his] ultimate goal—to vex and harass the defendants[.]" *Minna Ree Winer Children's Class Tr.,* 1996 WL 264981, at *8.

### III. Alternatively, Mr. Stonebrook Should Pay Attorneys' Fees, Expenses, and Costs Pursuant to the Court's Inherent Powers

If the Court does not find that Mr. Stonebrook's claims are clearly frivolous, clearly vexatious, and/or brought primarily for purposes of harassment under the FCA, Defendants respectfully request that the Court award attorneys' fees, expenses, and costs pursuant to its inherent powers.  Federal courts have the inherent power to assess attorneys' fees. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991).  This power "transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy." *Id*. at 46.  (internal quotations omitted).  Specifically, "a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id*. at 45–46 (internal quotations omitted).[4]

As described above, Mr. Stonebrook's meritless claims have been repeatedly disproven and were rejected by this Court.  He has continued to pursue this action beyond any reasonable threshold because he thought fearmongering and harassment could lead to a lucrative payday.  He epitomizes a bad faith actor.  If the Court finds that attorneys' fees, expenses, and costs are not warranted under the FCA, Defendants respectfully request the Court order them pursuant to its inherent powers.

---

[4] The Court may award attorneys' fees and cost pursuant to its inherent powers even if it denies fees under the FCA. *See United States ex rel. Tingley v. PNC Fin. Servs. Grp., Inc.*, 705 F. App'x 342, 344 (6th Cir. 2017).

9

## **CONCLUSION**

Mr. Stonebrook has used the private enforcement provision of the FCA as a vehicle to propagate fear and misinformation about COVID-19 vaccines without any factual basis. He engaged in egregious conduct in bad faith to extort a financial settlement in an attempt to line his own pockets. Defendants respectfully request that he be held to account for attempting to corrupt the FCA, manipulate the U.S. government, harass Defendants and undersigned counsel, and waste this Court's valuable time and resources. For the foregoing reasons, Defendants respectfully request the Court find that Mr. Stonebrook's claims are clearly frivolous, clearly vexatious, and/or brought primarily for purposes of harassment and award their reasonable attorneys' fees, expenses, and costs under 31 U.S.C. § 3730(d)(4). Alternatively, if the Court does not find attorneys' fees, expenses, and costs are warranted under the FCA, Defendants respectfully request that the Court award them pursuant to its inherent powers.

DATE:  March 29, 2024                              Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Jonathan P. York*
Jonathan P. York (DC ID No. 1657875)
*Admitted Pro Hac Vice*
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
202.739.3000 (phone)
202.739.3001 (fax)
jonathan.york@morganlewis.com

Elizabeth M. Bresnahan (MA ID No. 672577)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
617.341.7700 (phone)
617.341.7701 (fax)
elizabeth.bresnahan@morganlewis.com

Scott. A. Memmott (DC ID No. 10406)
*Admitted Pro Hac Vice*
Paul D. Mayer (DC ID No. 1671773)
*Admitted Pro Hac Vice*
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
202.739.3000 (phone)
202.739.3001 (fax)
scott.memmott@morganlewis.com
paul.mayer@morganlewis.com

*Attorneys for Defendants Sigma-Aldrich Corporation, Research Organics LLC and EMD Millipore Corporation, as well as Merck KGaA, Darmstadt, Germany (by special, limited appearance)*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this March 29, 2024, I caused a copy of the foregoing document to be served upon all counsel of record via the Court's CM/ECF system.

                                          */s/ Jonathan P. York*
                                          Jonathan P. York

## **RULE 7.1(a)(2) CERTIFICATE**

      I, Jonathan P. York, certify that counsel for Defendants has attempted in good faith to resolve or narrow the issues raised in this Motion, but due to confusion as to whether Plaintiff / Relator David Stonebrook continues to be represented by counsel in this matter, has been unable to do so. Defendants expect, however, that Mr. Stonebrook opposes this Motion.

                                          /s/ *Jonathan P. York*
                                          Jonathan P. York